DANIEL L. DYSART, Judge.
| (Wanda G. Timpton appeals a judgment whereby the trial court granted her ex-husband and father of their children, sole custody of the two girls. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
Wanda G. Timpton and Robert J. Jemi-son are the parents of two minor daughters, Robrielle, approximately 15, and Rhaina, approximately 12, at the time of the subject hearing. Since the parties filed for divorce in 1999, the record reveals that they have been combative on every front from property issues to the welfare of the children. To fully understand the degree of contentiousness, it is necessary to detail the litigation history.
The first judgment on the issue of custody and child support was rendered in November 1999. The parties were awarded the joint custody of the children, with Dr. Timpton being named the primary domiciliary parent. Mr. Jemison was awarded visitation; however, no specific schedule was set out in the judgment.
li>In November 2004, Mr. Jemison moved to modify custody and child support. The parties were ordered to submit to mental health evaluations prior to judgment. There is nothing in the record to indicate that the evaluations ever took place. However, the record does indicate that in January 2005, Dr. Timpton was held in contempt for violating a temporary restraining order, refusing to sign a consent judgment[1], and failing to abide by an interim visitation order. Also, the judgment ordered Dr. Timpton to immediately return the children to Louisiana[2], suspended Dr. Timpton’s visitation, gave Mr. Jemison *1008 interim sole custody, and ordered that Dr. Timpton be arrested for issues related to community property. A mental health evaluation was ordered again.
In November 2006, Mr. Jemison filed numerous rules related to both community property and the children. The custody and support issues were continued until a mental health evaluation was completed.
The parties entered into a consent judgment in July 2007, whereby Dr. Timpton would have supervised weekend visitation at her mother’s when she was in town. It is apparent from a February 2009 ruling of the court that there were issues with Mr. Jemison complying with the visitation order because he was ordered to deliver the children to their maternal grandmother’s home for visitation with their mother, Dr. Timpton.
|3The record contains a judgment signed by Judge Cates on March 23, 2009, relative to a hearing held on October 29, 2008. The judgment orders interim child support to be paid by Dr. Timpton, grants Mr. Jemison’s rule for final child support, and sets Dr. Timpton’s percentage of the child support obligation. On March 30, 2009, Judge Bruno signed an interim consent judgment relative to a hearing on March 5, 2009. The judgment ordered the parties to share custody of the children, ordered Dr. Timpton to pay all school expenses for Robrielle, and one half of the fees for Dr. Brockman, a child psychologist who was treating both children. Mr. Jemison was ordered to pay all school expenses for Rhaina, to pay half of Dr. Brockman’s fees, and to maintain health insurance for the children. A permanent injunction was granted prohibiting Dr. Timpton or any of her agents from harassing Mr. Jemison at home or work.
On April 9, 2009, Mr. Jemison filed a rule for contempt alleging that Dr. Timp-ton had failed to pay the tuition for Robr-ielle or half of the psychologist’s bill. This rule and others filed since the last hearing were heard on May 18, 2009. Relative to the children, the trial court ordered Dr. Timpton to pay Mr. Jemison monies owed for Robrielle’s tuition and Rhaina’s psychologist. The court held Dr. Timpton in contempt, but suspended the sentence. In an apparent attempt to protect Mr. Jemi-son’s credit (he had signed the loan documents for Robrielle’s tuition), the trial court ordered Dr. Timpton to have the tuition loan documents transferred into her name. Lastly, because the situation between the parties had ^deteriorated to such a degree, the trial court ordered that the transfer of custody take place by taxi cab.
In July of 2009, the trial court again entertained numerous rules filed by both sides. The trial court held Mr. Jemison in contempt for failure to pay past due child support and spousal support, and applied a credit to the amount owed. His sentence was suspended. The court again held Dr. Timpton in contempt for failure to pay child support and other expenses previously ordered to be paid by her. The court suspended her sentence also.
After another hearing on rules held on December 9-10, 2009, the trial court again ordered shared custody, with Mr. Jemison designated as the domiciliary parent. A parenting coordinator was appointed, whose costs were to be split by the parties. Dr. Timpton was again held in contempt for failure to comply with a previous order of the court relative to the community property, and was ordered to perform community service. The court ordered the parties to submit proposed child support judgments. Once submitted, the court issued its ruling and found that Dr. Timpton was voluntarily underemployed. It ordered her to pay Mr. Jemison support, ordered Mr. Jemison to maintain health *1009 insurance, and ruled that any extraordinary or uncovered medical expenses shall be paid on a pro rata basis, Dr. Timpton’s share set at 56% and Mr. Jemison’s at 44%. Dr. Timpton was to pay Robrielle’s tuition and all related school expenses, and Mr. Jemison would be responsible for Rhaina. The parties would split 50/50 any costs for tutoring or mutually agreed upon extracurricular activities.
|fiOn October 18, 2010, another hearing was had on the parties’ competing rules. The trial court rendered judgment on October 22, 2010, denying Dr. Timpton’s rule to reduce child support, granting Mr. Je-mison $9,112.35[3], and denying Mr. Jemi-son’s rule to modify visitation. Mr. Jemi-son filed a rule to amend the judgment alleging that the trial court failed to include in its judgment of October 22 all of the items ruled on at the hearing. The trial court granted relief, amending the judgment to include holding Dr. Timpton in contempt for failure to pay child support, ordering her to serve community service, and to pay attorney’s fees and court costs. Dr. Timpton additionally was found in contempt for failure to pay her portion of bills incurred on behalf of the children and was sentenced to additional community service. Lastly, there was an error in calculation of the amount awarded Mr. Je-mison. The trial court amended the judgment to reflect the correct amount ($10,-619.45), and made the award executory. In connection with the judgment, the trial court also signed an income assignment order directed to Dr. Timpton’s employer with Mr. Jemison as payee.
On February 8, 2011, the trial court rendered judgment on Mr. Jemison’s rule to modify custody and Dr. Timpton’s rule requesting a conference between Robrielle and the court. The trial court denied the request for a conference, and granted Mr. Jemison sole custody of the two girls, with Dr. Timpton having 1 ¿visitation every other weekend. The court relieved the formerly appointed parenting coordinator of her duties.
This appeal followed.
DISCUSSION:
Dr. Timpton raises numerous assignments of error; the first three being related to proper notice and service of Mr. Jemison’s rules for change of custody and mental health evaluations. Dr. Timpton argues that the rules were served upon her counsel by Federal Express and not by the Orleans Parish Civil Sheriff as required by jurisprudence. Further, she argues that the rules were not filed fifteen days before the hearing as required by the Civil District Court’s local rules.
Mr. Jemison counters that the proper vehicle to challenge service of the pleadings was by filing an exception of insufficiency of service, which according to La. Code Civ. Proc. art. 925, is waived unless pleaded therein.
Our review of the record indicates that counsel for Dr. Timpton did not properly challenge the service of the rules in question, nor did she request a stay of the trial court proceedings to seek supervisory review by this Court. Rather, counsel participated fully in the hearing on the motions, both those filed on Dr. Timpton’s behalf and those filed on behalf of Mr. Jemison.
Accordingly, the first three assignments of error have no merit.
The remaining assignments of error are relative to the custody of the *1010 children. The Supreme Court has affirmed numerous times the principle that the best interest of the child is paramount in making a decision concerning custody. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), and its progeny. The burden of proof for a change of custody previously established by a considered decree is a heavy burden. The party seeking the change must prove that a change of circumstances has occurred materially affecting the welfare of the child and that the continued custody is so deleterious to the child as to justify modification of the current custody decree. Bergeron, 492 So.2d at 1194.
In her fourth assignment of error, Dr. Timpton argues that the trial court erred in not specifically stating in its reasons for judgment whether it determined if she had met the burden of proving a change of circumstances as required by Bergeron, supra.
She alleges that the change of circumstances which would warrant the trial court awarding Dr. Timpton sole custody of Robrielle was an alleged act of violence committed by Mr. Jemison against Robr-ielle. This Court has carefully and thoroughly read the transcript of the hearing on this rule and finds no error in the ruling of the trial court.
The trial court heard the testimony of Dr. Timpton, Dr. Timpton’s older daughter from a previous relationship, Mr. Jemison, and the investigator from the Office of Child Services relative to the alleged incident. It is clear that the trial court found no such incident occurred. Rather, the trial court found and stated in its reasons that Dr. Timpton was undermining Mr. Jemison’s attempts to discipline Robrielle at every turn. For example, Mr. Jemison had taken away from Robrielle a cell phone her mother had given her because she was using it to send Iewd[smessages to school mates. Robrielle rebelled by calling the police and alleging that her father had beaten her. The police investigated the incident and referred it to Child Services, which found no basis for the complaint. Based on the court’s detailed reasons for judgment, it is evident that the trial court did not find Dr. Timpton had sufficiently proven any change in circumstances sufficient to grant her sole custody of Robrielle.
The fifth assignment of error is that the trial court erred in finding that Mr. Jemison proved a change of circumstances sufficient to modify custody. Again, this Court’s reading of the record convinces it that the trial court took the time to familiarize itself with the history of this case, carefully listened to and asked questions of the witnesses, and on numerous occasions commented on the need to hear from every witness involved because of the seriousness of the decision to be made.
In its reasons for judgment, the trial court stated:
This court notes that Dr. Timpton has a long history of challenging the decisions of educators and mental health professionals in their care and treatment of her daughters. In addition to this pattern of resistance being noted by two mental health professionals, Judge Cates and this court noted the same.... Her reaction to any conflict her daughters are experiencing has been to either change schools or change mental health providers. Dr. Timpton has also attempted to create conflict between her daughters and their father.
This court finds that the Bergeron, supra, burden has been met by Mr. Jemi-son. This court believes that there needs to be one person predominately deciding what is in the best interest of *1011 these two at risk children. Although Mr. Jemison was designated primary domiciliary parent, this scheme has been a failure. Dr. Timpton has [ ^undermined his authority. There needs to be a level of autonomy vested in one parent for these girls to thrive.
We find the trial court carefully weighed the record evidence and made a ruling based on the best interest of the children. See La. Civ.Code arts. 131, 134. This assignment of error has no merit.
In her sixth and seventh assignments of error, Dr. Timpton argues that the trial court erred in attributing record testimony to her, when in fact the testimony was given by the children’s psychologist in response to questions by both counsel and the court. Counsel for Dr. Timpton goes so far as to suggest that the trial judge was leading the psychologist by asking suggestive questions.
Our reading of the record reveals no such pattern of leading questions. What is clear is that the trial court made a concerted effort to hear both sides of the issue. For example, the court refused to rely upon a report from the children’s psychologist, but, rather, continued the hearing to accommodate the psychologist’s schedule and allow her to give live testimony. The judge repeatedly stated on the record that these issues were too important to make a ruling without considering all relevant evidence. We find the trial court weighed the evidence fairly, always with the children’s best interest in mind.
The eighth assignment of error is that the trial court negatively imputed to the mother a pleading caption to infer that Dr. Timpton only wanted sole custody of Robrielle, and not Rhaina. Counsel for Dr. Timpton apologizes in her brief for causing this inference, explaining that she has not practiced domestic law in twenty years. The reason for entitling the pleading was to call attention to the one child who had suffered violence at the hands of her father. The title should not have |10been construed to mean that Dr. Timp-ton would not want sole custody of both children.
As stated previously, the evidence presented to the trial court and reviewed by this Court indicates that there was no substance to Robrielle’s complaints of abuse. Mr. Jemison admitted to “spanking” Robrielle by striking her with his belt below her knees. There was no evidence of bruises or other marks on Robr-ielle introduced into the record. We note that there is a picture of an arm with what looks like scratches on it in the record; however, there is no way to identify whose arm it is or even when the picture was taken. Robrielle’s face cannot be seen in the picture. On the other hand, the investigator from Child Services personally visited with and examined Robr-ielle and concluded there was no basis for her complaint. Thus, we cannot say that the trial court made faulty assumptions concerning Dr. Timpton’s intentions based on the title of a pleading. To the contrary, the record is replete with evidence to support the trial court’s ruling.
In her last assignment of error, Dr. Timpton argues that the trial court erred in refusing to allow her counsel to question witnesses about events occurring prior to the rendering of a previous judgment. She contends that she was attempting to establish Mr. Jemison’s propensity for violence.
The admission of evidence is within the discretion of the trial court. Munch v. Backer, 10-1544, p. 3 (La.App. 4 Cir. 3/23/11), 63 So.3d 181, 185. The record indicates that Judge Bruno, the third judge to hear this case since the petition for divorce was filed in 1999, reviewed the *1012 entire record from its inception. Indeed, as part of a prior ruling, he chronicled the history of the case indicating to this Court that he was aware of every step taken by each side over the years. His reasons for judgment given in conjunction with the judgment on appeal indicate that he [ nstruggled with the decision to restrict Dr. Timpton’s custody and visitation, but felt compelled to do so in the best interest of Robrielle and Rhaina. We find no error in the trial court’s decision to disallow a rehashing of prior events.
CONCLUSION:
We find the trial court carefully weighed the evidence before it and was well within its discretion to award sole custody of the two children to Mr. Jemison. We affirm the judgment of the trial court in its entirety.
AFFIRMED

. It is not clear from the record what judgment Dr. Timpton refused to sign.

. Again, this Court is unable to determine the background for these rulings from the record on appeal.

. The judgment does not detail the reason for the award; however, Mr. Jemison filed a rule for contempt for Dr. Timpton’s failure to pay child support and her portion of expenses incurred for the children.