YELVERTON, Judge.
This case comes from a judgment changing custody of Ainsley Marcellana Kimble, only child of the former marriage of Chris Kimble and Fabian Kimble, now Bordelon. This is the second change of custody of this seven-year-old child in less than a year. We granted a writ to review the decision and the case is now before us.
The judgment of divorce rendered on July 29, 1983, granted custody of Ainsley to Fabian, the mother, with visitation rights to Chris, the father. In late 1989 Chris sought and obtained a change of custody to him, with Fabian given visitation rights. This change was heard and decided by retired Judge William A. Cul-pepper, sitting by appointment to a vacancy on the district court. This change was *1010 implemented by a transfer of custody in January 1990.
Nine months later, on August 29, 1990, Fabian filed a rule seeking a return of custody to her. The trial of this rule was conducted by the newly elected successor judge in the district. This judge changed the primary custodial parent from Chris back to Fabian. From this ruling, Chris sought writs to this court.
In Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), the Supreme Court set forth the following burden of proof rule for custody modification cases:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
Chris contends that the trial court erred in finding Fabian had met her heavy burden under Bergeron. The successor judge in his reasons for judgment, noting that the Bergeron rule applies only where there has previously been a considered decree of permanent custody, initially questioned whether there was a considered decree by the predecessor judge. Nevertheless, the trial court rested its decision on a finding that Fabian’s proof had met both tests under Bergeron.
We find that the first 1990 change of custody was a considered decree. We reverse the second 1990 change of custody, finding that Fabian did not meet the Ber-geron burden of proof standards. Our reasons follow.
THE FIRST 1990 CUSTODIAL CHANGE
Ainsley went to live with her father, Chris, in early 1990. In his reasons for judgment on December 4, 1989, Judge Cul-pepper explained that Chris had borne his burden of proving that the continuation of custody with Fabian and her second husband, Michel Bordelon, was so deleterious to the child as to justify changing custody. Fabian and Michel Bordelon married in 1984. Judge Culpepper found that their home had a history of use and abuse of marijuana which included the arrest of both Fabian and Michel in January 1989. Fabian pled guilty to possession of marijuana with intent to distribute and was given a suspended sentence of five years at hard labor, and placed on supervised probation for three years, conditioned on her paying a fine of $2,500 and complying with other conditions. Michel pled guilty to possession of marijuana, second offense, and his sentence included serving one year at hard labor.
Michel Bordelon’s criminal record did not begin with the above arrest. Judge Cul-pepper noted that his record counted two convictions for felony theft in 1973 and 1976, three arrests for DWI in 1980, 1981 and 1986, a 1981 conviction for possession of marijuana with intent to distribute, and a 1986 charge of aggravated battery and aggravated assault. During trial, Michel admitted to a long history of habitual use of marijuana, but stated that he intended to stop. His own father testified that his son had used marijuana for years and had always promised to stop, but never had.
The use of drugs was not the only problem that plagued the mother’s home. Judge Culpepper found evidence of repeated arguments, physical fights and periods of separation. In fact, the above mentioned charge against Michel for aggravated battery and aggravated assault was filed by Fabian after he had beaten her. Fabian also admitted to another occasion when she thought she filed criminal charges against Michel as a result of beatings she received. Ainsley was a witness to at least one of these physical fights. The couple admitted that they had been separated at least three times for periods lasting two to three months each.
Judge Culpepper took into account the above described conduct in changing custody. He also considered the home of the father, Chris. Chris remarried in 1984 and had two children by his second wife, Pam. *1011 Chris was employed as a car salesman in Baton Rouge and was active in civic affairs in his home town of Melville as president of the newly formed Jaycees. The stepmother was a housewife and worked part time in a beauty shop. Judge Culpepper in his reasons for judgment said that he was impressed with the stepmother as a very stable and loving person, and felt that their home would comfortably accommodate Ainsley. For all of these reasons primary custody of Ainsley was granted to Chris. The court in its reasons for judgment stated that it was convinced that the father had borne his heavy burden of proof.
THE SECOND 1990 CUSTODIAL CHANGE
We must now determine whether the successor judge erred in finding that the continuation of Chris’ custody of Ains-ley was so deleterious as to justify another change of custody. To make this determination we have carefully examined the record of this hearing, and the trial court’s reasons.
We find in the record that nothing has occurred which is so harmful to Ainsley as to justify removing her from Chris’ custody. Chris and his wife provide a stable environment for Ainsley. There is no evidence of drug usage, severe arguments, physical fights, or any physical separations during Chris and Pam’s six-year marriage. Ainsley is involved in extracurricular activities such as Brownie/Scouts and summer Bible school. The family regularly attends church where Ainsley participates in choir and Sunday school. Testimony indicated Chris and Pam have accepted Ainsley into their home and she is treated like the other children. The successor judge was concerned about testimony that Chris and Pam had talked to Ainsley about Fabian’s and Michel’s arrests. Whether or not this was the wisest course of parental discretion, their truthful explanation of these events to the child could not have been so harmful that removal of Ainsley from Chris’ home was necessary. There was nothing else in the record suggesting that Ainsley’s welfare suffered in the custody of Chris.
The successor trial judge also found that Fabian proved by clear and convincing evidence that the harm likely to be caused by a change of environment was substantially outweighed by its advantages to the child. We again disagree. The trial judge obviously believed that Ainsley would be better off with her mother. He thought that Fabian and Michel had reformed, and that this removed the circumstances that caused the previous change of custody. Fabian and Michel testified that in the time interval since the last custody hearing they had not used drugs and that they had not had any arguments or physical encounters. It is of little worth in this context that they have conducted their lives properly and that they have not violated any condition of their probation. The considered decree of the predecessor judge is not so easily set aside.
An advantage seen by the trial judge was the cultural benefits, such as music, art, and religion, that Ainsley enjoyed while living with her mother. Although these experiences are certainly desirable in a child’s growth, we note that Chris’ household is not totally bereft of a cultural atmosphere. While her mother’s environment provided her with piano and T-ball, her father’s environment has offered Ainsley Brownie/Scouts and summer Bible school. As to religion, Ainsley has been raised in a church regardless of which parent had custody. In this respect both parents appear to have provided Ainsley with all that was available to them. If in fact there are more advantages with Fabian, they do not substantially outweigh the harm of moving this child again.
CONCLUSION
In Bergeron, the Supreme Court explained why a heavy burden of proof is justified:
The available empirical research data and psychiatric opinions indicate a need for strict standards that set clear boundaries for modification actions. There is evidence that more harm is done to children by custody litigation, custody changes, and interparental conflict, *1012 than by such factors as the custodial parent's post divorce amours, remarriage, and residential changes, which more often precipitate custody battles under liberal custody modification rules than conduct that is obviously harmful to the child, such as abuse or serious neglect, which justifies intervention to protect the child under the court’s civil or juvenile jurisdiction, (emphasis added)
The evidence in this case falls far short of meeting the heavy burden of proof to support a change of custody back to Fabian.
The battle for Ainsley’s custody has resulted in three changes in the custodial setting in just seven years, twice in the last year alone. The burden of proof requirements of Bergeron must be carefully enforced.
For the foregoing reasons, we grant the writ and make it peremptory, and the trial court judgment granting custody to Fabian is reversed. Custody will remain with Chris Kimble in accordance with the judgment of December 4, 1989. It is ordered that the December 4, 1989, judgment is reinstated. Costs at trial and in this court will be shared equally.
■ WRIT GRANTED AND MADE PEREMPTORY; JUDGMENT REVERSED.