COVINGTON, Chief Judge.
The mother of a minor child appeals the judgment of the family court which sustained a peremptory exception raising the objection of no cause of action, and which dismissed the mother’s rule seeking a change of custody, or in the alternative, modification of the visitation scheme and for contempt of court. Because we find that the mother stated a cause of action under Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), we reverse the judgment sustaining the exception and remand the matter for further proceedings.
The parties herein were married on July 8, 1985, in the state of Texas, and thereafter established their matrimonial domicile in Baton Rouge, Louisiana. One child, Justin Daniel Johnson, was born of the marriage on July 27,1986. Mr. Johnson filed a petition for separation on February 9,1987, to which Mrs. Johnson reconvened; the contested hearing on the matter, including custody, was held on three separate days and the court took the case under advisement. There is no transcript of the hearing in the record. A minute entry dated December 3, 1987, contained the following:
This matter having been submitted and taken under advisement, the Court this day rendered judgment granting a separation from bed and board, making a specific finding of mutual fault.
The Court believes both parties love the child and are very capable of caring for him; however, the Court also believes the[s]e parties cannot effectively communicate and under the jurisprudence an award of joint custody would be inappropriate and not in the best interests of the child. Therefore, the Court is faced with the difficult task of choosing one to be the custodial parent. The care, custody, and control of the minor child was awarded to the father with liberal visitation for the mother. The parties are to agree upon a visitation schedule by December 30,1987. If the parties can not agree, the Court, upon notice, will develop a visitation schedule.
A written judgment of separation was filed into the record on February 4, 1988, in which custody of the child was granted to the father, and liberal visitation of every other week was granted to the mother. Thereafter, a judgment of divorce was entered on March 1, 1988, based on the parties having lived separate and apart in excess of one year, which continued the custody and visitation provisions of the judgment of separation.
On February 14, 1990, the mother filed the rule herein, seeking the change of custody, alleging that Mr. Johnson had surreptitiously left the state with Justin, without notice to her, shortly before she was to exercise her week of visitation, and had refused to allow Justin to visit her since leaving the state. The allegations of the rule on this issue were as follows:
On motion of Karen Lampton[1], formerly known as Karen Johnson, through her undersigned attorney, and on suggesting to the Court:
[[Image here]]
16.
That without obtaining permission from this Court, without in anyway [sic] first seeking a modification of the visitation judgment rendered by this Court, and without any prior notice to Mover, Danny Johnson quit his job in Baton Rouge, Louisiana and moved to Tupelo, Mississippi.
17.
That Mover’s most recent weekly visitation period was to commence at 6:00 P.M. on Thursday, February 1, 1990.
18.
That on Wednesday, January 31, 1990, Mover telephoned Danny Johnson’s home in Baton Rouge and to her surprise was informed by the operator his telephone number was no longer in service.
*1327 19.
That Mover then on the same day telephoned Danny Johnson’s place of employment in Baton Rouge and to her even greater surprise was informed he had quit his job.
20.
That upon further investigation Mover learned Danny Johnson had moved to Tupelo, Mississippi and had taken Justin with him.
21.
That Tupelo, Mississippi is approximately five to six hours by automobile from Baton Rouge, Louisiana, or approximately ten to twelve hours by automobile round trip.
22.
That Mover at the time was pregnant and was expecting to give birth in the immediate future. (Mover’s son Douglas was born February 12, 1990.)
23.
That because of her pregnancy, Mover was physically unable to go to Tupelo, Mississippi to pick up Justin and she so informed Danny Johnson.
24.
That on February 2, 1990, Mover’s father, Charles Keith, who is the maternal grandfather of Justin, left his home in Texas and went to Danny Johnson’s home in Tupelo, Mississippi to pick up Justin for Mover so that Mover would have her scheduled visitation for that week.
25.
That Danny Johnson refused to allow Justin to go with Mover’s father.
26.
That Danny Johnson stated he has custody of Justin; that as custodian of Justin he has control over who will pick Justin up at the beginning of Mover’s visitation periods; and that he will allow only Mover, and no one else, to pick up Justin.
27.
That because of the distance between Baton Rouge, Louisiana and Tupelo, Mississippi and because of Mover’s pregnancy, this action by Danny Johnson effectively deprived Mover of her visitation rights provided for in the aforesaid judgment.
28.
That on February 14, 1990 Mover contacted Danny Johnson, reminded him that in accordance with the judgment of this Court her next scheduled visitation period begins on February 15, 1990, and informed him she was personally coming to Mississippi on February 15, 1990 to pick up Justin for her scheduled visitation period.
29.
That Danny Johnson informed Mover he would not permit Mover to pick up Justin for her visitation period commencing February 15, 1990 as fixed and defined by the aforesaid judgment of this Court.
30.
That Danny Johnson also informed Mover he would not in the future permit Mover to pick up Justin for her visitation periods as fixed and defined by the aforesaid judgment of this Court.
Additionally, appellant alleged that Mr. Johnson has been uncooperative with her in her efforts to have a good relationship with Justin, that he makes unfavorable remarks about her in the child’s presence, and that he permits his family members to do the same. She further stated that she and her new husband both wish to provide a two-parent home for Justin, along with his newborn half-brother and 10-year-old step-sister, the daughter of her husband. Finally, Mrs. Lampton requested sole custody of Justin, or alternatively a change in visita *1328 tion giving her alternate four-week intervals, that a social study be conducted, and that Mr. Johnson be held in contempt and assessed court costs and reasonable attorney’s fees.
An order pending the hearing on this matter was signed on March 26, 1990, granting Mrs. Lampton visitation every other weekend, and specifying that either Mrs. Lampton, her husband, or her father could pick up and return Justin for these visits. The order also directed that a social study be conducted. On that same date, a judgment was signed holding Mr. Johnson in contempt of court and assessing him with all costs and $500.00 in attorney’s fees for Mrs. Lampton. However, the actual hearing on the change of custody issue was not held at that time, and was several times assigned and continued to a later date.
On November 5, 1990, Mr. Johnson filed a peremptory exception raising the objection of no cause of action, asserting that the allegations of mover’s petition fell short of the heavy burden imposed on her by Bergeron v. Bergeron, which requires proving that continuation of the present custody is so deleterious to the child as to justify modification, or that the harm likely to be caused by a change of the environment is substantially outweighed by its advantages to the child.
Although there is no transcript of the proceedings held, a minute entry dated November 7, 1990, states: “This matter came up pursuant to regular assignment. Present in court were Joseph Raggio, Attorney for Mr. Johnson and Michael Theri-ot, Attorney for Mrs. Johnson. Argument heard and the Court sustained the exception and the case was passed.”
On November 14, 1990, Mrs. Lampton filed a second rule for contempt against Mr. Johnson, alleging that he had failed and refused to pay the costs and attorney’s fees assessed against him in the prior contempt proceedings. A hearing was therefore assigned on the matter for January 28, 1991.
On January 9, 1991, Mr. Johnson filed a rule seeking to terminate all visitation between Justin and his mother, or in the alternative for “supervised and controlled” visitation, alleging belligerent behavior by Justin following his visitation with his mother, who he asserted was attempting to influence Justin’s behavior towards Mr. Johnson and his family. Mr. Johnson also filed another peremptory exception raising the objection of no cause of action, as well as an exception raising the objection of no right of action.
On January 22, 1991, Mrs. Lampton filed a supplemental and amending rule for change of custody, or alternatively for modification of the visitation scheme. In addition to the prior allegations of her original rule, she asserted that, because of the unique custody and visitation arrangement originally established by the Court, which allowed for equal access and contact by both parents with the child, the current change in the visitation and resulting decrease in contact with his mother has caused substantial harm to Justin. Specifically, she averred, “Since the child was surreptitiously removed from Baton Rouge, and with growing frequency, the child has often expressed extreme confusion about whether or not he should love her. Other examples of this harm will be shown at trial.” Mrs. Lampton then alleged:
Indeed, Justin has in fact told mover recently that he has been told by his father and his father’s parents that he is to love only his father. Justin has taken this to mean that since he does not see his mother as often as he used to he is not to love her. Indeed, he seems to be acting with greater indifference and even, on occassion [sic], antagonism towards Karen.
Finally, the rule alleged that Mr. Johnson’s prior job in Baton Rouge involved a work schedule of seven days on, seven days off, and that his physical custody of Justin coincided with the seven days when he did not work. Contrary to that situation, Justin allegedly now spends the majority of his time in Mississippi with his grandparents because his father has a five-day a week job. He allegedly stated that he sometimes lived with his grandparents *1329 and sometimes lived with his father. Mrs. Lampton also alleged, “Mover believes and so alleges that the parents of Danny K. Johnson not only failed to encourage and foster continued and meaningful contact between Justin and mover, but have actively obstructed any such relationship since the time Justin was removed from Baton Rouge.”
The record reflects that a hearing was held on January 24, 1991, but contains no transcript of the proceedings. A minute entry of January 28, 1991, states: “This matter was taken under advisement on the 24th day of January 1991 and the Court this day rendered judgment dismissing the exception of no right of action but will sustain the exception of no cause of action.” Judgment was accordingly signed, and in written reasons subsequently filed by the trial court pursuant to a request by counsel for appellant, the trial judge stated:
The Court believed that Mrs. Johnson had a right of action since she is the mother of the minor child. However, the Court believed that the allegations in the petition, even if proven, would not meet the burden required under Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Therefore, the Court sustained the exception of no cause of action.
On appeal, Mrs. Lampton contends that her allegations of unstable environment, impairment of her relationship with Justin resulting from geographical and time constraints on her visitation with him, and the active efforts of Justin’s father and his family to undermine her relationship with her child, are sufficient to state a cause of action under Bergeron to require a hearing on her request for a change in custody. We agree.
In Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), the Louisiana Supreme Court restated the burden of proof in a custody modification suit as follows:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. 492 So.2d at 1200. [Citations deleted.]
Under LSA-C.C.P. art. 931, we must accept as true the allegations of appellant’s pleadings for the purpose of considering whether she has stated a cause of action. See, Robinson v. North American Royalties, Inc., 470 So.2d 112 (La.1985), appeal after remand, 509 So.2d 679 (La.App. 3d Cir.1987). Having done so, when we examine her allegations in the light of Berger-on’s strictures, it is clear that they comprise “a showing of a change in circumstances materially affecting the welfare of the child,” 492 So.2d at 1194, and that they meet the heavy burden under either prong of the test.
The legislature has enumerated specific factors to be considered in custody disputes, whether they are initial awards of custody or modifications of existing schemes. Under LSA-C.C. arts. 134 and 131 C(2)(j), the factors expressly include “[t]he willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.” The concern of the legislature with this particular factor is evident, as it is also expressly urged in art. 131A(2): “In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of that parent’s sex or race.”
Mrs. Lampton’s rules allege facts which definitely show a change in circumstance. Mr. Johnson’s voluntary change in jobs, which results in a significantly diminished amount of time with his son during his physical custody of the boy and necessitates that Justin’s grandparents be more heavily involved in his daily care, as well as the increased geographical distance between Justin and his mother and the com- *1330 píete alteration of the court-imposed visitation scheme that had allowed Justin to spend equal time with both parents, are all changes which, arguably, materially affect the welfare of the child.
In addition, the allegations that Mr. Johnson and his family are actively seeking to disrupt and/or damage Justin’s relationship with his mother merit further consideration. In Price v. Price, 451 So.2d 1187 (La.App. 1st Cir.1984)[2], this court affirmed a change of permanent custody of a younger child to the father, despite the resulting separation of siblings, because of the danger of the destruction of the parent-child relationship due to an elder sibling’s hostility to the father and the mother’s inability “to facilitate and encourage a close and continuing parent-child relationship” between the younger child and the father. Mrs. Lampton’s allegations of deliberate efforts to sabotage her relationship with her child, combined with the other alleged factual circumstances of this case, are even stronger support for a change of custody than was present in Price; she is entitled to a hearing on the merits so that she may attempt to offer evidence in support of her allegations. Proof of her allegations would prove that the present custody is so deleterious to the child as to justify modification of the custody decree, satisfying the first prong of Bergeron, as well as comprising the clear and convincing evidence that the harm likely to be caused by a change in environment was substantially outweighed by its advantages to the child, which the second, alternative prong of Bergeron requires.
For these reasons, the judgment of the family court is reversed, and the matter is remanded for consideration in accordance with the views expressed herein.
Costs of this appeal are assessed to ap-pellee.
REVERSED AND REMANDED.

. The record reflects that appellant remarried on June 25, 1988, and now uses her new husband’s surname of Lampton.

. Although we recognize that Price v. Price was decided under the standard of the best interest of the child, prior to Bergeron’s announcement of the heavy burden of proof requirement, we consider the proof offered therein would also satisfy Bergeron’s requirements.