SCHOTT, Chief Judge.
This is a dispute between Robert Ledet and his former wife Colleen Mitchell Weaver over the custody of their child, Misty, who was born on March 11, 1979. When the parties were divorced in 1984, Ledet obtained custody. In 1985 and 1987, Weaver tried unsuccessfully to change custody, but she succeeded in having her visitation privileges extended. In July, 1990, Weaver filed another rule to change custody which the trial court dismissed after a hearing. From this judgment Weaver has appealed.
Appellant married Johnny Weaver in 1984 and resides in South Carolina. Appel-lee married Sally Ridgel Ledet in 1987 and has always resided in Chalmette, Louisiana. In the 1987 judgment, the trial court allowed appellant to exercise visitation rights with Misty in South Carolina between June 10, 1988 and August 10, 1988, and each year thereafter. A considerable amount of friction developed during the 1989 summer visitation period.
According to appellant, as soon as Misty joined her in South Carolina in 1989 she found that the child was withdrawn and unhappy. In the course of a telephone call to her father and stepmother, Misty became hysterical and told appellant she was going to be beaten by them. Appellant arranged counseling for Misty and had the final session scheduled for August 14, 1989. In the meantime, appellant had changed her phone number to an unlisted one. According to appellee’s wife, they tried to call appellant but could not reach her. Consequently, they went to South Carolina on August 11 and enlisted the aid of the police in locating Misty. Both sides make charges which are denied. For instance, appellant says the only way she could be reasonably certain that Misty got her letters was to send them by certified mail, but some of these were refused. Appellant also charged that appellee and his wife prevented Misty from speaking to her on the telephone. Appellee’s wife denied these charges. Typically, both parties charge each other with manipulating the child, but both claim they encourage the child to maintain a good relationship with the other parent.
At the request of appellant, the trial court appointed Dr. Rennie Culver, a psychiatrist-neurologist, to evaluate the child and the parties. In a September 5, 1990 report, he made several findings: neither party has a significant problem which would preclude having custody; Misty desires to be in her mother’s custody; and she is withdrawn and unhappy, but this cannot be attributed to any mistreatment by appellee and his wife. He made the following recommendations:
... Broadly speaking, I think it would be reasonable at this time to allow Mrs. Weaver to take this child to South Car *1327 olina for the next academic year and to assume physical custody of her. Misty wants it, Mrs. Weaver certainly wants it, and apparently Mr. and Mrs. Ledet are willing to make this concession at this time. Misty is obviously very unhappy in her present situation, although she may have some idealized notion about what life in South Carolina with her mother and stepfather will be like. Although I have no evidence of it, there may be some other problem in her family with her father and stepmother that she is unwilling to talk about and which I know nothing about, and this may be an element in her wishing to leave the Ledet household. As a pragmatic manner, I would recommend that Mrs. Weaver have custody of this child for a provisional period of one year and to reassess this family and the situation at the end of next year should the controversy and dispute continue — i.e., if the parents involved in this case cannot agree among themselves as to what is acceptable to everyone. In summary, I believe that it is in the best interest of the child at this time to live in South Carolina with her mother, although I think this should be regarded as a temporary placement, subject to revision or change based upon a re-evaluation next year.
In reasons for judgment, the trial judge found that Dr. Culver’s recommendation was flawed because he erroneously believed that appellee had agreed to a custody change and because he placed too much importance on Misty’s wishes. He concluded that appellant failed to carry the burden of proof imposed upon her by Bergeron v. Bergeron, 492 So.2d 1193 (La.1986) in order to obtain a change in custody.
In Bergeron the court considered what effect the amendment of LSA-C.C. art. 157 by Act 447 of 1977 had on the body of jurisprudence with respect to both initial grants and modifications of custody. The court held that the amendment codified the principle that the paramount consideration in a custody case is always the best interest of the child and did away with the maternal preference rule. However, the court held that the legislature did not change the remaining jurisprudential principles which are 1) to support a modification of custody the moving party must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior custody order; 2) the party seeking modification has the heavy burden of proving that the continuation of the present custody is so deleterious to the child to justify removal of the child from her customary environment; and 3) on appellate review the determination of the trial judge is entitled to great weight, and his discretion will not be disturbed in the absence of a clear showing of abuse.
In commenting on the burden of proof on one such as appellant seeking to modify custody which was previously awarded to appellee in a considered decree of permanent custody, the court stated at page 1200:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
In this court appellant contends that the trial court erred in finding she failed to carry her burden of proof. She argues that a reading of Dr. Culver’s complete report shows that he questioned appellee’s credibility and his willingness to cooperate. On the contrary, Dr. Culver concluded that “all of the adults [including appellant and appellee in this case] show some evidence of personality disturbance ... but ... no one is psychotic or has any major personality disturbance.” A fair reading of his report does not support a conclusion that appellee’s custody is so deleterious to Misty as to justify a change. The report simply does not cast appellee in such a bad light.
*1328 Appellant argues that she proved a change of circumstances since 1984 sufficient to support a change of custody. She refers to the facts that Misty was withdrawn and unhappy and her school grades had declined. Dr. Culver stated that Misty’s mental state could be the result of the conflicts and stresses typically placed on an adolescent in the middle of a custody battle and was not necessarily the result of the present custody situation. Furthermore her grades had not declined so drastically as to constitute a material change in circumstances.
Appellant questions the trial court’s findings that Dr. Culver’s report was flawed because the conclusion erroneously assumed that appellee had consented to the custody change and because Dr. Culver placed too much importance on Misty's wishes. We find no error in the trial judge’s reasoning. Dr. Culver specifically referred to these factors as the basis of his recommendation.
As to appellee’s supposed consent to the change, Dr. Culver may have gotten this impression in September, 1990, when he wrote his report because this was under consideration at that time in settlement discussions between the parties. But, when the case came to trial, appellee had obviously withdrawn this proposal if indeed he ever made it. Consequently, Dr. Culver’s reliance on this supposed consent was misplaced and erroneously contributed to his ultimate recommendation. With respect to Misty’s wishes Bergeron specifically held at page 1203 that a child’s preference standing alone is not a material change affecting the child’s welfare.
This is a close case. Perhaps this court would reach an opposite result if this were a de novo review. One unexplained curiosity in the case is the failure of appellee to testify at the hearing. However, since neither party mentioned this, we attach no significance to it. The deciding factor in the case is the time honored rule reiterated by the court in Bergeron that upon appellate review the determination of the trial judge in child custody matters is entitled to great weight, and that discretion will not be disturbed on review in the absence of a clear showing of abuse.
In the exercise of his discretion the trial court was bound to consider all the evidence, including Dr. Culver’s recommendation. That recommendation is not a strong one based upon the needs of this child. It is more of a suggestion for a trial period of custody in the mother in order to see how things would work out. The recommendation does not purport to deal with the Ber-geron considerations which govern the disposition of a suggested change in a custody arrangement that was in existence for seven years. The trial judge was vested with the discretion to decide the case, not Dr. Culver. Appellant has failed to demonstrate an abuse of that discretion.
Accordingly, the judgment is affirmed.
AFFIRMED.