615 So.2d 396 (1993)
Monica Jean SCHULTZ
v.
Abduladim Abdulbari ELREMMASH.
No. 92-CA-903.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1993.
Writ Denied May 7, 1993.
*397 D. Douglas Howard, Jr., Rachel C. Marinovich, New Orleans, for plaintiff/appellee.
Terence L. Hauver, Jeanne M. Gravois, Lowe, Stein, Hoffman, Allweiss and Hauver, New Orleans, for defendant/appellant.
Before WICKER, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
The defendant, Abduladim Abdulbari Elremmash, appeals a decision of the trial court granting sole custody of his minor daughter, Neesa, to her mother, plaintiff herein. We affirm.
The record shows the parties were married on November 7, 1984. One child, Neesa, was born of the marriage on June 2, 1985. A petition for separation was filed by the wife on February 21, 1986. The parties were subsequently divorced. A judgment was rendered on March 2, 1987 awarding joint custody with primary custodial care to the mother and reasonable visitation to the father. That judgment prohibited either party from taking the child out of the state without permission of the other party, and from taking the child out of the country without written permission of the other party. On June 24, 1987 the father filed an ex parte motion requesting that he be allowed to take Neesa to visit her grandparents in Athens, Greece. Mr. Elremmash is a Libyan citizen. In that ex parte motion Mr. Elremmash avers that his parents are residents and citizens of Libya and are unable to travel to the United States to visit their granddaughter. Mr. Elremmash also contends he requested written permission from his ex-wife to take Neesa to Athens but she refused. That request was denied.
On May 12, 1988 the wife filed a motion to modify the custody and visitation arrangements asserting that communications between the parties had deteriorated, an attempt at mediation had failed and there was no agreement as to Neesa's schedule. On May 27, 1988 the husband filed a rule to show cause again requesting permission to take the child out of the country. The wife filed a counter-rule asking the court to require a cash bond from Mr. Elremmash should he be allowed to take the child out of the country.
On October 26, 1988 the parties entered into a six page consent decree maintaining joint custody with the wife as primary custodial parent and granting liberal visitation to the husband. The judgment specifically detailed timesharing between Christian and Moslem holidays. The judgment dictates that travel outside the United States with Neesa by either party was prohibited. Further, all parties were ordered to participate in counseling with Dr. William Janzen.
On October 3, 1989 Ms. Schultz filed a motion to modify the joint custody plan because she had moved to Minnesota. The request was denied and the trial court ordered that Dr. Janzen issue a report to the *398 court on the advisability of modifying the child's schedule and the possible effects on the child of a move out of state.
On May 22, 1990 the parties entered into a new consent agreement maintaining joint custody and dividing the child's time between the mother and the father. That judgment also allowed Mr. Elremmash to take Neesa out of the continental United States during his summer visitation period between May 23, 1990 and July 31, 1990.
During that summer visitation period Mr. Elremmash took Neesa into Libya and failed to return her to her mother until about six weeks after the July 31, 1990 date. In February of 1991 Ms. Schultz returned to the New Orleans area and attempted a reconciliation with Mr. Elremmash. That reconciliation attempt failed.
On June 10, 1991 Ms. Schultz filed a rule to change custody in which she asserted that she intended to remarry and relocate to Minnesota. On July 3, 1991 the parties again entered into a consent agreement which permitted Mr. Elremmash to take Neesa outside of the United States, but not to Libya, between July 3 and August 17, 1991, the period of his physical custody. The pending rules for custody from both parties were continued until September, 1991 to allow time for custody evaluations.
On July 2, 1991 Mr. Elremmash filed a petition for a writ of habeas corpus alleging that Ms. Schultz informed Mr. Elremmash that she had no intention of allowing Mr. Elremmash to exercise his summer physical custody as ordered by the court.
On July 8, 1991 Ms. Schultz filed a petition for domestic relief in which she asserted that Mr. Elremmash had taken Neesa illegally into Libya and she believed he would do so again. The court granted Mr. Elremmash six weeks summer visitation with travel restricted to within the continental United States.
On July 25, 1991 Ms. Schultz filed a rule for interim custody, restricted visitation and/or bond to secure visitation requesting that she be granted custody of Neesa pending the custody hearing set for September 16, 1991. In that rule Ms. Schultz informed the court that she had remarried and relocated to Minneapolis, Minnesota and that Neesa was scheduled to begin school on September 3, 1991.
The court heard the custody matter on the 16th, 17th, 18th and 25th of September, 1991. On September 25, 1991 the court rendered an interim judgment pending the final judgment which was rendered on December 16, 1991. That final judgment awarded sole custody to the mother with liberal visitation and telephone contact to the father. The judgment also ordered Ms. Schultz to keep Mr. Elremmash fully informed of Neesa's progress in school and of any serious illness or other major developments in Neesa's life. The court prohibited travel outside of the United States with Neesa and ordered Neesa's U.S. passport to be surrendered to Ms. Schultz as well as her Libyan passport, should one be issued. It is from that judgment that Mr. Elremmash appeals.
During the four days of the custody hearing the trial court heard extensive testimony from the parties, Dr. Janzen and the principal of the school Neesa attended in New Orleans. The parties each testified about their relationship with each other and with Neesa. They further testified concerning the difficulties each has had as well as the compromises each has made in the raising of their daughter.
Dr. William Janzen testified that it was his feeling that, although Ms. Schultz was more given to compromise than Mr. Elremmash, both parties loved the child. Dr. Janzen testified that Mr. Elremmash admitted that he was involved in an illegal credit card scheme and did some gambling which he spoke of in terms of a "business."
Sharon Smetherman, principal of Kehoe-France elementary school, where Neesa was a student, testified that Mr. Elremmash called her to say that he did not want Neesa to recite the pledge of allegiance to the flag. Mr. Elremmash wanted Neesa physically removed from the room every morning when the pledge was being recited. Mr. Elremmash also came to school to physically remove Neesa during a Christmas pageant while the Nativity was being *399 performed and returned her just in time for her to go out on stage to play her part as a flower in the Nutcracker which followed the Nativity. Ms. Smetherman testified that Mr. Elremmash was insistent that Neesa not participate in anything that had any nationalism, patriotism or religious aspects whatsoever.
Mr. Elremmash admitted that he had a felony conviction for fraudulent use of a social security number which he used to falsely obtain a credit card and that his application for United States citizenship was withheld because of that incident. He also stated that, although he gambled and drank alcohol in the past, he gave those activities up when he became a father. He explained that he is a Moslem and wants his daughter to be exposed to his culture.
Dana Mesraty testified that she was married to a good friend of Mr. Elremmash's. Ms. Mesraty further testified that Ms. Schultz stated that she returned to New Orleans from Minnesota because her future husband was on drugs.
Ms. Schultz denied making that statement and testified that she tried to reconcile with Mr. Elremmash because it would be best for Neesa. Ms. Schultz further testified that Neesa is being exposed to her heritage and is voluntarily abiding by the dietary restrictions of her father's religion.
On appeal Mr. Elremmash argues that the trial court's judgment changing custody was based on cultural bias as reflected by Ms. Schultz's attorney throughout the hearing. We have carefully examined the transcript and find no evidence that the court's decision was biased. There are several incidents in which the attorneys became zealous in their representation of their clients. However, the court remained neutral and showed great restraint and fairness to both sides. That argument is meritless.
The extensive reasons for judgment written by the trial court satisfy us that thoughtful consideration was given to the matter. While acknowledging that cultural differences exist, the court gave no indication that the decision was in any way biased. The standard used by the trial court was "the best interest of the child." In part those reasons state:
The Court was impressed by Mrs. Peterson's testimony. The Court believes that Mrs. Peterson tried to make the joint custody arrangement work. The Court believes that Mrs. Peterson is much more flexible than Mr. Elremash (sic). Mrs. Peterson is now remarried to a physician. The Court believes that Mrs. Peterson and her new husband can provide a stable homelife for Neesa.
The Court perceived Mr. Elremash to be a very rigid individual. The Court's perception was supported by the testimony of several witnesses. Dr. Jantzen, called by the defendant, testified that the parties have developed a pathological relationship since the divorce. He testified that there is considerable animosity and disagreement between the parties. In Dr. Jantzen's report dated July 11, 1988 he stated "the pathology in the relationship is fueled to a greater extent by Mr. Elremash." He also stated, "Mr. Elremash is much more critical."
Sharon Smetherman, plaintiff's witness, is the principal of the lower school at Kehoe France. She testified that Mr. Elremash continuously called the school and objected to Neesa participating in the Pledge of Allegiance. She testified that not only did Mr. Elremash not want Neesa to say the pledge but he did not even want her in the classroom when the pledge was being said. Ms. Smetherman also testified that on the day of the school Christmas play, Mr. Elremash yanked Neesa out of the play at the last moment and refused to allow her to participate. The Court firmly believes that Mr. Elremash's behavior was inappropriate and caused the child to feel like an outcast.
Mr. Elremash testified very adamantly that he wanted Neesa raised in the Moslem religion. Mrs. Peterson testified that she would prefer that Neesa be raised as a Catholic. The Court believes that if awarded sole custody of Neesa, Mrs. Peterson will continue to allow Neesa to explore her heritage.

*400 Mr. Elremash is not an American citizen. He appears to be extremely critical of American ways, yet he chooses to live here. Mr. Elremash has been convicted of a felony and has a history of gambling. Dr. Jantzen, in his July 1988 report, states, "Mr. Elremash appears, at times to be unwilling to function within the rules of society." Mrs. Peterson has expressed a concern that Mr. Elremash will take Neesa to Libya and she will never see the child again. The Court feels this is a valid concern. Mr. Elremash has applied for U.S. Citizenship; but it may not come easily in light of his felony conviction. Mr. Elremash's future in this country is speculative at best.
The State Department has issued a travel advisory stating that it is not safe for American citizens to travel to Libya. Despite this warning, Mr. Elremash smuggled Neesa into Libya by hiding her in the automobile and returned the child six weeks later than the custody schedule allowed. The Court feels that Mr. Elremash exercised very poor judgment and that he might do the same thing again if given the opportunity.
It was the Court's impression that Mrs. Peterson has the child's best interest at heart. The Court believes Mrs. Peterson wants Neesa to experience life in a carefree manner. On the other hand, the Court believes Mr. Elremash wants Neesa to be raised in a very restricted manner. This Court does not want this child to be caught in the crossfire any longer. Accordingly, it is in the best interest of Neesa that her mother have sole custody.
The Court believes that it is important for Mr. Elremash to be a part of Neesa's life. Dr. Jantzen stated that Neesa is very much attached to her father. He believes that "Neesa will suffer some separation anxiety but that is not to say she would not overcome it." Therefore, the Court feels that Neesa needs to be enrolled in a program of counseling or therapy to address these issues.
In altering the custody arrangement whether it is joint or sole, the best interest of the child should be considered uppermost. Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). The trial court is vested with much discretion in child custody matters. Moffatt v. Moffatt, 508 So.2d 851 (La.App. 5 Cir.1987) writ den. 512 So.2d 1180 (La. 1987).
We believe the trial court expressed valid, supportable reasons for altering the joint custody agreement which do not suggest cultural bias. We find no abuse of the trial court's discretion. Consequently, we affirm the judgment. All costs of this appeal are assessed to appellant.
AFFIRMED.