NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-216

DARLA HUTCHINSON

VERSUS

PHILIP REED

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2002-364
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and James T. Genovese, Judges.

AFFIRMED.

Michael B. Holmes
P. O. Dr. 790
Kinder, LA 70648
(337) 738-2568
Counsel for Plaintiff/Appellee:
    Darla Hutchinson

**J. Phillip Terrell, Jr.**
**P.O. 1190**
**Alexandria, LA 71309**
**(318) 561-2561**
**Counsel for Defendant/Appellant:**
     **Philip Reed**

GREMILLION, Judge.

The defendant, Phillip Reed, appeals the trial court's judgment maintaining joint custody of the minor child and the plaintiff, Darla Hutchinson, as the domiciliary parent. For the following reasons, we affirm.

**FACTS**

Reed and Hutchinson are the parents of the minor child, Arielle, who was born during the parties' cohabitation. In 2002, Hutchinson filed a Rule for Sole Custody and Temporary Restraining Order and Use of Occupancy seeking sole custody of Arielle, who was seven years old at the time. Reed filed an answer and counter rule seeking custody of the child. Following several days of testimony, the trial court rendered judgment which awarded joint custody of Arielle to Reed and Hutchinson, designated Hutchinson as the domiciliary parent, and awarded Reed substantial visitation. However, a written judgment was not rendered by the trial court until November 4, 2005.

In December 2005, Hutchinson filed a Rule to Modify Custody and for Temporary Custody Order alleging several changes in circumstances which necessitated that she be granted sole custody of the child. On January 31, 2006, the court issued an order requiring all involved parties, including the child, to submit to mental health evaluations by Dr. John Simoneaux, Ph.D. Pending a modification hearing, it ordered that custody of the child remain with Hutchinson, with limited supervised visitation awarded to Reed. Thereafter, Reed filed a Rule for Contempt and Rule to Change Custody alleging that Hutchinson had unilaterally terminated his visitation and contact with the child.

1

Following a hearing on both rules, the trial court rendered judgment finding Hutchinson in contempt for violating Reed's court-ordered visitation and fined her $750. It further maintained the joint custody of the child, Hutchinson as the domiciliary parent, and awarded Reed substantial, unsupervised visitation. The trial court also ordered that both the parents and the child undergo parenting coordinator counseling and that the child undergo non-forensic counseling. Finally, the trial court determined the child support obligation of each parent. This appeal by Reed followed.

## ISSUES

On appeal, Reed raises two assignments of error. He argues that the trial court erred by failing to award him sole custody of the child, and in the alternative, by not naming him domiciliary parent. Next, he argues that the trial court erred by not substantially increasing the amount of time he spends with the minor child.

## STANDARD OF REVIEW

A trial court's determination of child custody is entitled to great weight on appeal and will not be disturbed absent a clear abuse of discretion. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756. When the trial court has made a considered decree of custody, the petitioning party bears the difficult burden of proving that the continuation of the present custody situation is so deleterious to the child that it justifies a modification of the custody arrangement, or of proving by clear and convincing evidence that any harm likely to be caused by the change of environment is substantially outweighed by the advantages to the child. *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986). A considered decree is one in which evidence as to

parental fitness has been received by the trial court. *Oliver v. Oliver*, 95-1026 (La.App. 3 Cir. 3/27/96), 671 So.2d 1081.

In this instance, the original custody order was a considered decree. Thus, Reed had to prove that Hutchinson's custody of Arielle was so deleterious that it justified a modification of the present custody arrangement, or of proving by clear and convincing evidence that any harm caused by a change of environment would be substantially outweighed by the advantages to the child. *Bergeron*, 492 So.2d 1193.

Dr. Simoneaux, a psychologist, performed court-ordered evaluations of Hutchinson, Reed, and Arielle. He recommended that the parties have joint custody of Arielle, that Hutchinson remain the domiciliary parent, and that Reed be allowed liberal visitation. He further recommended that the parents offer each other the right of first refusal with regard to daycare, which he explained, if done assiduously, would result in an approximate fifty-fifty split of custody. He indicated that sole custody is typically not in the best interest of the child, but if the situation between Hutchinson and Reed continued to be contentious, it would be appropriate.

Dr. Simoneaux testified that he did not believe that either Hutchinson or Reed were abusive or "crazy." However, he stated that Hutchinson should stop making allegations of abuse, neglect, and implications of sexual abuse as there was no evidence that any had occurred. If she feared Reed was sexually abusing Arielle, then he stated that she should report him to the police or child protection. He stated that he had heard nothing to indicate that Reed had acted inappropriately towards Arielle; rather, he felt that Reed was a very good father.

3

With regard to the alleged acts of physical abuse, Dr. Simoneaux testified that he believed that Arielle did not find the action complained of to be abusive, but that she was aware that Hutchinson and her family thought they were. He stated that a child who wants to please both parents will say whatever she believes her parents want to hear. Dr. Simoneaux further testified that Hutchinson allows Arielle to make numerous decisions, which infers to her that she can make decisions with regard to her custody or visitation. He felt that this was inappropriate for an eleven-year-old child.

In reviewing his evaluation, Dr. Simoneaux testified that Hutchinson "faked good" in her testing to an extreme extent. He stated that this surprised him as she has a psychology degree. He described the Child Abuse Potential Inventory as being very transparent because Hutchinson related no problems in her life. Dr. Simoneaux found this statement bizarre in light of the fact that she was involved in a custody battle with a man who she claims might have sexually abused her child. He stated that the test results suggested that Hutchinson would have a tendency to exaggerate small things into bigger problems. He further found a persuasive, pervasive criticism of Reed, which if Hutchinson truly believed, would make it very difficult for her to foster a relationship between him and Arielle. He felt that Hutchinson was extraordinarily shortsighted in the way she had acted.

Dr. Simoneaux testified, after hearing all of the testimony, that if the situation was reversed and Reed had secreted Arielle to Texas and had prevented Hutchinson from seeing her, he had no doubt that Hutchinson would now have sole custody of her. He further stated that he was worried that Hutchinson would continue

4

to ignore the trial court's visitation order as she had done previously. He further stated that it was important for Arielle to hear them communicating with each other and to be consistent with her. He recommended that Hutchinson and Reed undergo counseling in order to learn to communicate with each other.

Dr. Simoneaux testified that there was a slight nod in favor of the domiciliary parent being of the same gender as a child of this age. However, he saw nothing to indicate that Reed could not adequately raise Arielle. He stated that it was important for Reed to be involved in Arielle's day to day activities and would hope that both parents would participate equally in her school functions and work. He testified that the saving grace for Hutchinson was that Arielle was not extraordinarily disturbed by this situation and was still functioning in school and was a pleasant child away from this issue.

Hutchinson testified that she filed her rule to change custody because Reed was refusing to facilitate and foster a close and loving relationship between her and Arielle. She explained that Reed was encouraging Arielle to alienate her by smothering the child with attention when they were all together and requiring her to stay by him. Hutchinson said that the only time they were all together was at the ball field, where he required Arielle to sit next to him and that he would remain in the dug out during the entire game. She further admitted that she never notified him of any school activities over the past year and that there was no communication between them at all.

Hutchinson's next ground for changing custody was that Reed would discourage Arielle from establishing friendships with other children and would

5

discourage her friends from contacting Arielle at her home. Next, she stated that he directed an inordinate amount of affection to her and tried to exercise physical and mental control over her activities. She described this as Reed smothering the child. However, she agreed that her's and Reed's parenting styles were very different. She stated that she disagreed with Dr. Simoneaux's finding that she gave Arielle too much room in decision making.

Hutchinson's next reason for change of custody was that Arielle was having difficulty continuing the split custody arrangement and that she had expressed a wish to spend more time with her. She further disagreed with Dr. Simoneaux's opinion that a child's preference in custody matters should not be given much weight.

Finally, Hutchinson stated that she feared for Arielle's physical and mental well-being if the current visitation plan continued. She based her fear on the physical contact Reed had with Arielle, because he slept in the same bed with her. Although she had no evidence to suggest that Reed had done anything inappropriate to Arielle, she stated that Arielle told her that she was excited because her father had bought her a bed. She further based her fears on Arielle's report that Reed grabbed and squeezed her neck on two occasions. She stated that Reed and his brother had taken their children to the zoo, and Arielle later told her that he had grabbed and squeezed her neck while her uncle was not present. However, she stated that she observed no bruising on Arielle's neck and did not report the abuse to a doctor. Despite any evidence to substantiate her fears, Hutchinson testified that Arielle was scared of Reed and that there had to be a reason for her fear.

Hutchinson stated that she has never prevented Arielle from calling Reed or from accepting a call from him. She stated that he had given Arielle a cell phone, but that she thought it was out of minutes. She said that Reed had never called Arielle on her home phone number. Although she did not think her phone number was in the phone book, she thought Reed could get it by calling information. In September 2005, Hutchinson stated that she wrote and informed Reed that they were moving and enclosed her new address. However, she said that he had never visited Arielle at their home and that nothing was restraining him from going there.

Hutchinson testified that Arielle expressed a desire not to visit Reed in November 2005, after he asked her to keep a journal in which she was to write negative things about Hutchinson. She stated that Arielle was having panic attacks about the journal and that she sought to protect her by refusing Reed his visitation. She said that Arielle was afraid if she did not write the right things in the journal, there would be repercussions.

In order to carry out Arielle's wishes, Hutchinson stated that she took Arielle to Texas prior to Thanksgiving in 2005, and left her with her sister for a week while she went to Tennessee to get married. While in Texas, she stated that her sister enrolled Arielle in daycare during the day. Before doing so, she testified that she called Reed and told him that Arielle did not want to stay with him, but would not explain why. She stated that she attempted to contact him again before his next scheduled visitation, and then sent him a December 1, 2005 letter stating that Arielle did not want to visit and asking him to respect her wishes. Hutchinson further testified that she prevented Reed from exercising his weekday visitation on several

7

occasions by checking Arielle out of school early on the days he was to pick her up. She stated that she did this in order to eliminate the stress that Arielle was under. In doing so, she admitted that she violated the trial court's orders pertaining to Reed's visitation and his right of first refusal to care for Arielle anytime Hutchinson needed childcare.

In his rule to modify custody, Reed alleged various changes in circumstances which necessitated the change of custody in his favor. He alleged that Hutchinson acted in a manner designed to prevent a close and continuing relationship between him and Arielle, and had refused to comply with the trial court's orders pertaining to visitation and his contact with the child. He based this claim on lack of phone communication and Hutchinson's violation of his court-ordered visitation and right of first refusal.

Reed testified that he gave Arielle a pre-paid cell phone, but said that she never called him because she said her mother would not allow it. He stated that he attempted to call both Arielle and Hutchinson numerous times after January 2006, but would not receive an answer. He said that Hutchinson never answered her phone when he called. He was unaware that Hutchinson had a land line as he was told that she had given it up. When he called Arielle at her maternal grandparent's home, he said that he was informed that his calls were inconvenient.

Prior to Thanksgiving 2005, Reed testified that Hutchinson took Arielle to Texas and left her there while she went to Tennessee to get married. He stated that she called him and told him that Arielle did not want to spend time with him and that she would not be going to him for the Thanksgiving holiday. Although he pressed

8

her for an explanation, she refused to give one. He stated that he went to Arielle's school to pick her up, but that she was not there. Reed testified that Hutchinson contacted him again after Thanksgiving to inform him that he would not get Arielle for his next scheduled visitation. Thereafter, he stated that he received a letter from Hutchinson asking him to respect Arielle's wishes not to see him. Reed stated that this incident violated both his visitation and his right of first refusal. Additionally, he stated that when he picked Arielle up after Thanksgiving 2004, she told him that she had been at her grandmother's home for seven days and six nights.

Reed stated that he was further prevented from exercising his weekday visitation because Hutchinson would check Arielle out of school early on those days. He stated that Arielle's principal told him that Hutchinson purposefully did so in order to prevent his visitation. On one occasion, he stated that he went to Arielle's bus stop to pick her up after she was dropped off by the school bus. The bus stop was located near a church, of which Terrance Dindy was the minister. Reed asked Dindy, who was his friend, to stay with him while he waited for the bus. He stated that Hutchinson's mother, Maxine, was also there waiting for the bus.

When Arielle got off the bus, Reed stated that he called to her and that she started walking towards him and Dindy. However, he testified that Maxine grabbed Arielle and told him that she was not going to let her go with him. He said that he informed her that he had court-ordered visitation and attempted to show her the court order. However, he stated that she said that she knew what the document stated, but that she was going to take Arielle and that he would have to knock her down or call the police in order to prevent her from doing so. She further told him

9

that he could stick his court order up his a _ _. Reed stated that all of this occurred in front of Arielle, who was crying and visibly upset as a result of the encounter. Dindy's testimony substantiated that of Reed's with regard to this incident.

Reed next complained that Hutchinson had failed to complete a court-ordered parenting course and failed to enroll Arielle in counseling with a mutually agreed upon counselor. He stated that he completed a web-based parenting course, as ordered by the trial court in the original custody judgment. He further said that he spoke to Hutchinson about enrolling Arielle in counseling after the first judgment was rendered, but stated that he later learned that she had taken her to a counselor in Lake Charles without informing him of her intention.

Reed further alleged that Hutchinson made derogatory remarks about him and also allowed third persons to do so in Arielle's presence. He stated that Hutchinson's mother told Arielle that he was a liar and that she was a liar just like him. He also described the incident at the bus stop.

Finally, Reed alleged that Hutchinson withheld information pertaining to Arielle's health and her extracurricular activities. He stated that he learned that Arielle needed glasses and was having kidney problems from Arielle herself, rather than from Hutchinson. Although he tried to call her about this, she would not answer his call. Reed further testified that Hutchinson never informed him of any of Arielle's school activities. He stated that the only communication concerning these activities was sent home by the school with Arielle, but that Hutchinson never forwarded this information to him.

Reed testified that he resides in a two-bedroom apartment, in which Arielle has her own bedroom and bed. He stated that he has never forced her to sleep with him. He denied grabbing Arielle by the neck or around the ribs and squeezing her. He stated that he and his brother had taken Arielle and his niece to the Alexandria zoo, but denied the complained of contact. He stated that he might have grabbed her neck in order to steer her in a direction or put his arm around her shoulders while walking with her. He further testified that Arielle has never found his affection uncomfortable or that she seemed apprehensive around him.

Reed stated that he was an assistant coach of Arielle's baseball team and that he sat in the dugout for that reason. He further denied that he told Arielle's friends and parents that they should not contact Arielle while she was with Hutchinson. Finally, he agreed that he and Hutchinson needed to communicate more effectively in raising Arielle and that they should engage in counseling in order to accomplish this goal.

Robyn Janasett, the mother of Arielle's friend, Megan, testified that she allows her daughter to spend time with Arielle at Reed's home, and has no reservations in doing so. She stated that she called Hutchinson prior to Thanksgiving 2005, to invite Arielle to spend the night with Megan. She said that Hutchinson told her they were going out of town for the holiday. Janasett further stated that Reed has never told her that Megan should not call Arielle while she is with Hutchinson and that Megan has been to Hutchinson's home while she had Arielle.

Mark Reed, Reed's brother, testified that he acts as an intermediary between Hutchinson and his brother as Reed's supervised visitation takes place in his

presence, at his home. Mark testified that he has never noticed any fear on the part of Arielle when she is with Reed. He stated that she is always excited about meeting him and has frequently said that she wished she could stay with them longer than the allotted five-hour visitation.

Mark further testified that Hutchinson did not make Arielle available for visitation on four different occasions. The first occurred when his son was born. He stated that he told Hutchinson ahead of time that they might be at the hospital on the Sunday in question and said that she agreed that the visitation would take place there. However, when he called to tell her that they were at the hospital, she only said that they would see them the next week. On another occasion, Mark testified that he was out of town and called Hutchinson to tell her that he would call her and let her know when he would be back in town. However, when he called her, she told him that they had plans and Arielle would not be going for Reed's visitation.

Mark testified that the third time occurred when Hutchinson called and told him that Arielle was sick and would not be able to go. Finally, he stated that the fourth time occurred when Hutchinson called and told him that they had a hearing coming up before their lawyers or the judge and Arielle would not be going for visitation. He stated that this incident occurred just after the visit to the zoo.

In oral reasons, the trial court held that joint custody remained in Arielle's best interest. Despite being concerned with Hutchinson's interference with Reed's visitation, the trial court maintained her as domiciliary parent. However, it warned her about further interference:

> I agree with Dr. Simoneaux that it was not malicious, but that there is something more going on there. I think that Arielle manipulated

you and – if she didn't want to go to her dad's she was able to catch on to whatever you wanted to hear and say the things that would make you not let her go to her dad's. And that is not the role of a parent. The Court believes that Dr. Simoneaux was aware of – Mr. Reed is very good at documenting things – so he was aware of what went on during Thanksgiving – at the wedding, of you checking the child out early so he couldn't have visitation, of the times that he missed his supervised visitation. All those things Dr. Simoneaux was aware of because all those things were documented very carefully by Mr. Reed. Dr. Simoneaux perhaps may not have believed everything, but it was confirmed during the hearing. However, you have said today, and the Court believes and wants to emphasize that this better be true, that your testimony said that you will abide by the orders of the Court and not interfere with Mr. Reed's custody or his visitation. That along with the fact that, as Dr. Simoneaux pointed out, at this age a child needs her mother's influence and guidance. And that Arielle has been living with you for quite some time now with limited visitation for almost a year, and the Court does agree with Dr. Simoneaux that an upheaval like that might – would not be in the best interest of Arielle. So, even though Dr. Simoneaux varied from his recommendation today in that he might recommend Mr. Reed as being the domiciliary parent, I believe that was just one little factor that tipped the scales, because basically it was tipping the scales in your favor prior to the testimony today, but not by very much. So, the Court is going to leave you as the domiciliary parent. However, be advised that if you do anything to disrupt Mr. Reed's visitation that the Court will look upon it very seriously if the Court has to hear any kind of modification at the request of Mr. Reed. And I want you to be on notice that if you cannot and do not encourage and facilitate a good relationship between Arielle and her father then the Court will not find you suitable as the domiciliary parent, if might even consider sole custody to the other party.

After reviewing the record, we find that the trial court has not abused its vast discretion in maintaining joint custody in the parties and Hutchinson as the domiciliary parent. Although evidence was presented that she has previously ignored the trial court's orders, the trial court has placed Hutchinson on strict notice that any such actions in the future could result in Reed gaining sole custody of Arielle. We further find that the trial court did not err in finding that Reed failed to prove by clear and convincing evidence that the harm caused by a change in environment would

13

substantially outweigh the advantages to Arielle if custody was changed to him. The trial court, after reviewing all of the factors, felt that based on her age, it was in Arielle's best interest that she remain with Hutchinson. This was obviously a close question and, although Reed would provide a more structured environment for Arielle, we cannot say that the trial court erred in finding that he failed to satisfy his burden of proof. Accordingly, this assignment of error is dismissed as being without merit.

## VISITATION

In his second assignment of error, Reed argues that the trial court erred by failing to award him substantially more visitation with Arielle. In briefing this argument, Reed only cites us to La.R.S. 9:335, without going into further detail. However, after reviewing the trial court's generous grant of visitation, we find no error in its decision. Accordingly, this assignment of error is denied as being without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court granting joint custody of the minor child to both parents and maintaining Hutchinson as the domiciliary parent is affirmed. The costs of this appeal are assessed to the defendant-appellant, Phillip Reed.

**AFFIRMED.**

**This opinion is NOT DESIGNATED FOR PUBLICATION, Uniform Rules—Courts of Appeal, Rule 2-16.3.**