NOT FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CU 0289

JENNIFER L. STEWART

VERSUS

DARREN DESOTO

*Judgment Rendered:* SEP 2 6 2024

********

The Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. F214112

The Honorable Charlene Charlet Day, Judge Presiding

********

Laurie N. Marien
Natalie C. Neale
Baton Rouge, Louisiana

Counsel for Appellant
Jennifer L. Stewart


Darren Desoto
Slaughter, Louisiana

Defendant/Appellee
In Proper Person

********

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

McClendon, J. dissents.

**LANIER, J.**

In this custody dispute, Jennifer L. Stewart sought modification of a prior custody agreement. For the reasons that follow, we affirm the trial court's October 26, 2023 judgment and issue this memorandum opinion in compliance with Uniform Rules–Courts of Appeal, Rule 2-16.1(B).

According to the record, this custody dispute has been before the trial court several times since 2016 for numerous motions, rules, and a trial on the merits. Pursuant to a prior stipulated judgment executed by the parties in 2017, the trial court declared Darren Desoto the legal father of JSD (DOB 10/9/14), the minor child born of a relationship between Mr. Desoto and Ms. Stewart. The parties were awarded joint custody of JSD "subject to a 2-2-3 visitation schedule and [Mr. Desoto's] enrolling in and participating in anger management counseling." Ms. Stewart was designated the domiciliary parent.

In 2018, Ms. Stewart filed a "Petition To Make Judgment Executory And Rule For Modification Of Custody & Support & For Contempt, Attorney Fees, & Court Costs." Ms. Stewart alleged a "material change in circumstances" since the rendition of the previous custody judgment such that it was now in the best interest of JSD that she reside primarily with Ms. Stewart, that Ms. Stewart remain the domiciliary parent, and that Mr. Desoto be awarded reasonable visitation. Ms. Stewart alleged, among other things, that Mr. Desoto did not co-parent effectively because of his Obsessive-Compulsive Personality Disorder ("OCD"), and he did not adequately communicate with her about the medical well-being and care of JSD while in his custody, refused to allow JSD to participate in extracurricular activities during his period of physical custody, and made negative and derogatory comments about Ms. Stewart in JSD's presence.

On October 7, 2020, a stipulated judgment was read, rendered, and signed by the trial court. The parties maintained joint/shared custody of JSD with Ms.

Stewart designated as domiciliary parent. The parties further agreed that JSD would attend University Laboratory School, with the parties equally sharing the costs of JSD's education until she attained the age of eighteen. A parenting coordinator was appointed, and the parties agreed to other things, such as communicating via email, a holiday schedule, and the obtaining of a passport for JSD. The parties agreed that the custody determination would be "a considered decree and subject to the [**Bergeron**[1]] standard with regard to any request for a modification of same."

Thereafter, in 2023, Ms. Stewart filed a second rule for modification of custody and contempt, once again seeking to modify custody such that JSD reside primarily with her, that Ms. Stewart remain the domiciliary parent of JSD, and that Mr. Desoto be allowed reasonable visitation. Ms. Stewart alleged that the custody arrangement set forth in the October 7, 2020 judgment was "so deleterious to the child as to warrant its modification, and/or that there exists clear and convincing evidence that the benefits of the change of custody requested outweighs the damages that will be done to the child such that it is in the best interest of the minor child."

Following a two-day trial, the trial court rendered its ruling from the bench. In a judgment signed on October 26, 2023, the trial court ordered, among other things, that the parties maintain joint custody of JSD with neither parent designated as domiciliary parent; that physical custody be modified to a week-to-week schedule; that JSD attend University Laboratory School; that the parties communicate exclusively through Our Family Wizard for a period one year; that both parties and JSD continue in counseling treatment; that the parties exercise physical custody of JSD during the holidays as set forth in the judgment; that Ms. Stewart have final decision-making authority concerning all of JSD's medical,

---

[1] See **Bergeron v. Bergeron**, 492 So.2d 1193 (La. 1986).

3

psychiatric, vision, and dental care; and that Mr. Desoto have final decision-making authority concerning all of JSD's extracurricular activities. The trial court also found Mr. Desoto in contempt for several violations of court orders, including his refusal to cooperate in obtaining a passport for JSD and failure to reimburse Ms. Stewart his pro rata share of JSD's expenses.[2]

From this judgment, Ms. Stewart has appealed. On appeal, Ms. Stewart asserts the trial court erred in: (1) unilaterally expanding the pleadings to remove Ms. Stewart as domiciliary parent and to modify the holiday custodial schedule when neither were pled or orally requested; (2) denying Ms. Stewart's request for primary physical custody; (3) ignoring JSD's best interest by removing the parenting coordinator and limiting the parties' mandated use of Our Family Wizard to a one-year period. Ms. Stewart contends that the judgment is "rife with prejudicial legal errors" necessitating independent *de novo* review by this court.

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. See La. Civ. Code art. 131; **Leger v. Leger**, 2022-1113 (La. App. 1 Cir. 3/13/23), 363 So.3d 519, 528, writ denied, 2023-00512 (La. 6/26/23), 363 So.3d 1231. The best interest of the child standard governs all child custody determinations, including the determination of whether to modify the domiciliary parent designation. *Id.* The trial court is in the best position to ascertain the best interest of the child given the unique circumstances of the particular case; thus, the trial court's custody determination is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. **Moore v. Prater**, 2021-1430 (La. App. 1 Cir. 6/3/22), 342 So.3d 994, 998.

_____

[2] Mr. Desoto has neither appealed nor answered the appeal in this matter. Therefore, that portion of the judgment is final as to Mr. Desoto.

Louisiana Civil Code article 134(A) provides the following non-exclusive list of factors that the trial court shall consider, along with any other relevant factors, in determining the best interest of the child:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The weight to be given each factor is left to the discretion of the trial court. **Moore**, 342 So.3d at 1000. In making its determination, the trial court is not bound to make a mechanical evaluation of all statutory factors listed in Article 134, nor is the trial court required to specifically explain its weighing and balancing of the Article 134 factors. Rather, the trial court should decide each case on its own facts and circumstances in light of Article 134 and all other relevant factors. **Leger**, 363 So.3d at 529.

Additionally, in most child custody cases, the trial court's determination is based heavily on factual findings. **Yepez v. Yepez**, 2021-0477 (La. App. 1 Cir. 12/22/21), 340 So.3d 36, 41. It is well-settled that an appellate court cannot set aside the trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. See **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). When presented with two permissible views of the evidence, the trial court's choice between them cannot be manifestly erroneous or clearly wrong. **Stobart v. State through Department of Transportation and Development**, 617 So.2d 880, 883 (La. 1993). Furthermore, it is well-settled that where there is a conflict in testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact are not to be disturbed by a reviewing court. **Moore**, 342 So.3d at 1001. If documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible that a reasonable fact finder would not credit it, the reviewing court may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. But in the absence of such factors, where the finding is based on the trial court's decision to credit the testimony of one party over the other, the finding can virtually never be manifestly erroneous or clearly wrong. **Rosell**, 549 So.2d at 844-845. One court has observed:

> In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of the witnesses, and decide how much weight to give the testimony in light of the factors in La. C.C. art. 134.

**Fuller v. Fuller**, 54,098 (La. App. 2 Cir. 7/21/21), 324 So.3d 1103, 1114, <u>writ denied</u>, 2021-01223 (La. 9/27/21), 324 So.3d 621.

Concerning the trial court's modification of custody, Ms. Stewart argues on appeal that the record overwhelmingly supports her request for primary physical custody. She further asserts that the trial court committed legal error by unilaterally expanding the pleadings and modifying the domiciliary parent designation and the holiday custody schedule because the issues were neither pled nor raised by either party prior to or during trial. She notes the grant of decision-making authority over extracurricular activities to Mr. Desoto and the grant of decision-making authority over all medical to her, but alleges error by the trial court in not allocating authority over major school decisions. She contends that these legal errors interdicted the fact-finding process, necessitating that this court conduct its own independent review of the record. Ms. Stewart requests that this court award her primary physical custody, reinstate her as domiciliary parent, and reinstate the original holiday schedule. In response, Mr. Desoto argues that Ms. Stewart filed a "comprehensive" rule to modify custody and "now finds herself offended by the results which she brought on herself." Recognizing the trial court's great discretion in custody matters, Mr. Desoto maintains that the trial court was in the best position to fashion a custody arrangement to align with JSD's best interests and minimize any risk of harm. We agree with Mr. Desoto.

During the trial of this matter, the trial court heard testimony from both Ms. Stewart and Mr. Desoto detailing their acrimonious relationship and the effects on JSD. Also testifying were Renee McCarthy, the parenting coordinator who had previously been appointed by the trial court, and Michelle Treadway, Mr. Desoto's sister. The testimony showed a clear pattern of animosity between Ms. Stewart and Mr. Desoto and the inability of both parties to co-parent and communicate effectively with regard to JSD's needs concerning school, health, extracurricular activities, and religion. Both Ms. Stewart and Mr. Desoto accused each other of being the reason the current custodial schedule was not working and the cause of JSD's emotional and educational challenges.

During the trial, the trial court made several references to the parties' need to work together on scheduling and the fact that it should not be "tit for tat." The trial court added that "what reasonable people do" is "look at their life ... look at their schedule, and if they need to make adjustments to what the court has ordered, they agree to do so if that is what's best for the child." The trial court further noted the importance of communication, advising Mr. Desoto as follows:

> Well, [JSD is] telling you one thing, and then she's telling her mother something else. That's not a good practice to start with an [eight-year-old] child, because by the time she reaches 16, she'll have it perfected and she will play both of you. So, this is why you have to communicate with each other.

Moreover, during the parties' closing arguments, the trial court indicated the custody arrangement was "definitely" going to be modified. The trial court further noted the need for "rules between the [parties]," adding that both of the parties would be held accountable for the rules. Subsequently, when going through the various rules that would be put into place, the trial court added, "You two don't get along well enough to talk on the phone, and ... I don't want [JSD] seeing you conversing with each other, if you're not going to be civil and polite." Nonetheless, the evidence revealed two parents who, despite their substantial

disdain for each other, appear to be equally fit and capable of parenting JSD and providing a good home for her.

When Ms. Stewart filed her rule to modify custody, everyone was put on notice that the issue of custody was going to be before the trial court. Ms. Stewart argued that the current custody arrangement was so deleterious to JSD as to warrant a modification, while acknowledging the best interest of JSD was the overriding concern. The parties appeared for a two-day trial and presented evidence and testimony. Although the trial court did not articulate reasons for judgment in this case, after hearing the evidence, including the testimony of Ms. Stewart and Mr. Desoto, the trial court implicitly found that JSD's best interests would be served by a modification of custody. Based on the evidence presented, the trial court maintained joint custody but modified the visitation from a 2-2-3 schedule to week-to-week. Included in the judgment is language obligating the parties to exchange information regarding the health, education, and welfare of JSD and authorizing both parties to discuss any information or issues with the administration and/or staff at University Laboratory School. Moreover, while the trial court did not designate a domiciliary parent, the judgment allocated final decision-making authority concerning all of JSD's medical, psychiatric, vision, and dental care to Ms. Stewart and final decision-making authority concerning all of JSD's extracurricular activities to Mr. Desoto.

Physical custody is a separate matter from legal authority and responsibility over a child. **Hodges v. Hodges**, 2015-0585 (La. 11/23/15), 181 So.3d 700, 705. The term "custody" is usually broken down into two components: physical or actual custody and legal custody. *Id.* Once a trial court awards legal joint custody, La. R.S. 9:335 governs the details of that custodial arrangement, including physical custody, as well as the legal authority and responsibility of the parents. See **Hodges**, 181 So.3d at 703.

9

Louisiana Revised Statutes 9:335 provides, in pertinent part:

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.

(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

(c) The implementation order shall include a provision that when either party is required to evacuate this state with a minor child because of an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority and it becomes impossible for the parties to exercise custody as provided in the judgment, the parties shall engage in continuous communication regarding the safe evacuation of the child, the location of the child during and after the emergency or disaster, and an interim custody plan for the child until the custody provisions of the judgment can be resumed.

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

In addition, La. R.S. 9:336 provides that "[j]oint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority."

While La. R.S. 9:335(B)(1) provides a preference for the designation of a domiciliary parent, such designation is not required as a court can instead allocate

10

decision-making authority by means of an implementation order. **Hodges**, 181 So.3d at 708-709. As set forth in La. R.S. 9:335(A)(2)(a) and (3), the implementation order "shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents ... and shall allocate the legal authority and responsibility of the parents." In **Hodges**, the Louisiana Supreme Court acknowledged that the statute does not require a particular form for the rendition of a joint custody implementation order, rather just that the mandatory requirements of La. R.S. 9:335(A)(2)(a) and (3) are satisfied. **Hodges**, 181 So.3d at 711.

The October 26, 2023 judgment maintains joint custody, sets forth a week-to-week visitation schedule and a holiday schedule, addresses the allocation of legal authority and responsibility of the parties regarding medical treatment and extracurricular activities, and contains provisions for the parties' rights and responsibilities relative to claiming JSD for income tax purposes, the payment of child support, and the sharing of expenses such as tuition and summer care. Concerning Ms. Stewart's argument that the judgment violates La. R.S. 9:335 because it fails to allocate legal authority and responsibility over school decisions, we note the following. In the October 7, 2020 stipulated judgment, the parties agreed that JSD would attend University Laboratory School and that they would share the costs of her education until JSD attained the age of eighteen. This agreement is carried over in the October 26, 2023 judgment. The current judgment further mandates that if the parties "cannot reach an agreement for any issues that arise, either party must file the necessary pleading to have the matter determined by the Court."

Based on our review of the record, we find that the October 26, 2023 judgment qualifies as an implementation plan for the purposes of La. R.S. 9:335. Once the trial court decided to maintain the parties' joint custodial arrangement,

modified with a week-to-week visitation schedule, the trial court acted within its discretion in allocating decision-making authority to the parties' by means of this implementation plan. As noted, each custody case must be viewed based on the particular facts and circumstances of the case, with the overriding consideration being the best interest of the child. See La. Civ. Code art. 131; **Leger**, 363 So.3d at 528. The trial court was required to make credibility determinations in this case and confect a custody arrangement in the best interest of JSD. Moreover, it is evident from the record that in crafting this judgment, the trial court sought to encourage more effective communication between the parties and implicitly concluded that JSD's best interests would be served by the modified custodial arrangement, including but not limited to allowing JSD time to foster a more stable relationship with both of her parents. Ms. Stewart has not demonstrated that these findings are manifestly erroneous. Thus, we find no abuse of discretion by the trial court in the modified joint custody arrangement.

Lastly, on appeal, Ms. Stewart argues the trial court abused its discretion by removing the parenting coordinator and limiting the parties' use of Our Family Wizard to one year. We find no merit to Ms. Stewart's arguments regarding these issues, both of which are discretionary matters.

When discussing the parenting coordinator issue with the parties, the trial court noted that Mr. Desoto had "kind of alienated Ms. McCarthy." Rather than having the parties "start all over again," the trial court stated, "It's going to be me. I'm going to be the parenting coordinator." We find no abuse of the trial court's sound discretion in its decision to resolve any conflicts that should arise between the parties rather than appointing a new parenting coordinator in this case.

Concerning the use of Our Family Wizard, the trial court noted that the parties had not been following the rules previously set forth in the October 7, 2020 stipulated judgment regarding email communications. The trial court then

12

continued, noting certain rules that would be enforced, such as including "FYI" for informative communications; "RR" for communications requiring a response, with a response required within twenty-four hours; and "URGENT" behind the "RR" for communication requiring an urgent response, with a response required within three hours. The trial court indicated that these annotations should be done in boldface type for ease of reference, adding that it would be monitoring the communications for at least a month and would "rule [the parties] into court" if they were not following these orders. This seems to be a clear effort by the trial court to get the parties to learn how to co-parent with less animosity. By limiting the use of Our Family Wizard to one year, the trial court was encouraging the parties to work on their communication skills, with some oversight by the trial court, all of which undoubtedly is in JSD's best interest. Accordingly, we find no abuse of the trial court's discretion in its decision to limit the parties' use of Our Wizard to one year.

## CONCLUSION

For the above and foregoing reasons, we affirm the October 26, 2023 judgment of the trial court. We assess all costs of this appeal to the appellant, Jennifer L. Stewart.

**AFFIRMED.**